and Mr. Pugh. Hello, Mr. Pugh. Judge, good afternoon. How are you? Yes, here we are. We're good. We're good. Thank you for asking. Judge, may it please the court, my name is David Pugh, P-U-G-H. I represent the appellants in this case. Judge, as a first matter, I agree with Mr. Finn that there are two of the appellants that whose cases are now moot. It's something of a house cleaning matter, but those are Josefina Sedano-Bustos and Junie Sedano-Bustos. Those matters were reopened and terminated based on other benefits that they had received, Judge. And who was the attorney that represented them at that point? Judge, at that point it was both myself and Attorney Constance Doyle, who was also a trial counsel. So, Judge, the issue here is whether the immigration judge erred by denying a motion to continue from the appellants. The individual hearing or the trial for their asylum petition came to be heard immediately after the government had been shut down for approximately 35 days, which is the longest shutdown to date in American history. The appellants, through their counsel, filed a motion to continue at the first available date that they could once the government had been reopened. And just so we understand, during the time of the shutdown, no filings could be filed in the immigration court. The basis of the motion to continue was based on the shutdown itself. So, in other words, she didn't argue that she was unable to Here is exactly what she said. She maintained that despite the fact that she had been diligently preparing for the hearing, that, quote, due to the recent government shutdown, which was a month, and the consequences attendant thereto, counsel has been unable to adequately prepare due to no fault of her own or that of her respondent. Do you really think that these people were given adequate representation, Mr. Pugh? Judge, I do not. And actually, that's one of the reasons that I also argue ineffective assistance. So I was going to get to that argument. But that is my second argument. My first argument is that the trial court erred, which I think is also true. I certainly recognize, Judge, as your honors recognize, that that does not go to good faith, that the motion itself, the written motion of the trial counsel here, does not establish by itself good faith. However, I think that the trial judge, the immigration judge, had a duty to inquire more than he did. And in fact, that duty is established by several cases, especially matter of Hashmi, but and also matter of L.A. But wait a minute. You know, you're arguing that that the immigration judge failed to apply the five factors that are set forth in Hashmi in assessing good cause. But aren't those factors applicable to situations in which the case, the continuance would allow for a determination on that collateral application? I'm, what we need to know here is what support you have for applying those factors where no such collateral application is pending. So, Judge, what what Hashmi does and L.A. and OBR, which recognizes Hashmi, is it lays out the basis that is to be followed in the good faith arguments that are supposed to be encapsulated in 8 CFR 1003.29. 1003.29 simply lays forth the fact that continuance can only be granted upon a showing of good faith. Now, in this case, there may have been no good faith. The reason that the judge erred here is is because he never allowed counsel to even proffer about the good faith. And later when she began to proffer about the good faith, talking about the complexity of the issues here, that there's six six appellants or six respondents in that at that level, and that it was a complicated case, he did not allow her to proffer. It was required for her to be able to proffer, to be able for him to be able to judge whether in addition of what she argued, which is not good faith, whether there was in fact a good faith basis to act for a continuance. She spoke of in her motions of her need to prepare. What did she need to do exactly? What wasn't done that could that should have been done? And by cutting... She had not done anything. She had not done anything. You know, I agree the judge did cut her off at times in response to what she was saying, but the topic was revisited numerous times and counsel repeated the same general statement about the shutdown, which reflected the statements in this written motion for the continuance, and and it lacked any specificity. She didn't assert an inability to obtain needed evidence in the time given or that a continuance would allow for the development of the claim in a manner that wasn't available in the 15 months already given. I mean the mere inability to file during one month of government shutdown would support a motion for late filings, but it didn't provide a reason for a shutdown. I know Judge Jackson has a question, which might also be part of it. I'll wait to answer your question. No, you should answer Judge Rovner's question. So, Judge, I agree with you except for one thing. I think that she did begin to try to argue for a good faith basis when she spoke about the complexities. I think that the judge has to know if there's a good faith basis. I do put in my brief the facts here, which are horrific, what this family group underwent before coming to the United States, and then for their case... But those facts were still in place when the initial hearing was set October 25th of 2017, and so those are the facts in 2017. The judge says in February of 2019 we will have this hearing. Yes, the the facts of this case though are not typical in that... What work had been done though before the government shutdown? I know that they had obtained many hundreds of pages of sworn affidavits, and this is by the way outside of the record or beyond the record, of sworn affidavits, all of which had not been translated yet. I don't know why that wasn't done. All of that, I think, goes to the second prong of my argument, which is ineffective assistance. We really need to get there too, because as you're well aware, that wasn't raised with the BIA. Yes. And now I'm to understand that you work with Ms. Doyle. At what point did you enter the case for these remaining petitioners that we have at issue today? So, Judge, I don't work with Attorney Doyle. Okay. On that one case, she just filed a substitute, supplemental appearance, because my appearance had been filed for the case. You were the attorney who were able to get the result for the two, not Ms. Doyle. Judge, I don't. The result was received, I'll say that. I'm sorry, what did you say? We certainly got a result for those two, Judge. I mean, the ineffective assistance was not raised with the BIA. That's more ineffectiveness. Yes. Did, at any point, have you attempted to see if the government would agree to a motion to reopen? Let me just skip straight there. Yes. In fact, the reason that this is an older case is because so much time has been spent by Mr. Finn and myself, quite frankly, working together to try to convince the DHS attorneys to do exactly that, to reopen it so that we can readdress some of these issues. Also, the family group that came in was quite large, and two of them are still pending. So it would be very easy just to join all of them. It would be the same argument. The government was unfortunately not willing to do that. So the motion to, a joint motion to open is off the table now? I'm certainly always, I'm sorry, my time is up. You may answer. No, you come to the right courtroom. I'm certainly very much open to that. I mean, you know, and I know that Mr. Finn, I think that he's not changed his mind that that seems to make sense, but that can't, that's not our call. I see. Yeah. I do have one follow-up question. When did you, when did you join the case? I'm just not clear still. I joined the case when, when this petition was filed. And so when Judge Rovner asked the question earlier, you mentioned that you had joined with Mr. Oyl, and I think that's where the confusion lies. So there was a, we had been, we had been seeking, after the appeal was taken, that the DHS attorney use the discretion of their office to terminate the case. They, so I had, in order to pursue that, I had to file my EOIR 28 at the trial court level, which I did, which made me the counsel of record. And so that's why there was both attorneys on that case. Thank you very much. I will give you some rebuttal time. Your Honor, thank you very much. Yeah, okay. Mr. Finn. Hello. Thank you, Your Honor. Stephen Finn for the respondent, the Attorney General. As the court's questions indicate, there's a significant question about the ineffective assistance of counsel at the trial court level. Our argument in our brief is, of course, that that issue is not exhausted. The, that was not raised on appeal, and therefore, under this court's precedent, and the Matter of the Zada case for the BIA, that is not a, that is a claims processing issue. They had their opportunity. It was not raised, and therefore it's not before this court. So, tell me this exactly. What are the requirements that must be met in order for a petitioner to reopen proceedings before the board to present a claim of ineffective assistance of counsel? Does the failure to do so foreclose all remedies? The Zada requirements, off the top of my head, if I can remember correctly, they at least have to make a filing with the State Bar in terms of counsel's professional service. I believe that they have to create some record of declarations, other materials to support the claim of ineffective assistance, and the remedy then before the board is they seek to reopen. Reopening is a discretionary motion with the board, and the board can then consider their Now, Mr. Stinn, I'm afraid this may not be in the record. Where are the plaintiffs? We know that two are fine. We know that two are still in somewhere, but where are they? Your Honor, that's probably a better question for Petitioners' Counsel in the fact that, to my knowledge, none of these petitioners have been removed from the United States. There are two petitioners now that have status. They have approved I-130 petitions, and therefore they have the authority or the ability to file for adjustment of status. So they are no longer for jurisdictionally before the court. Right, so that leaves four. Yes, the question on ineffective assistance, because we're arguing exhaustion in our brief, we did not try to assess or argue or develop a defense on a due process claim, and unless we have questions about that aspect of the case. Well, Judge Rovner did ask you, are all avenues foreclosed? At this juncture, at this juncture, they can always file a motion to reopen, and that's at the discretion of the board. That avenue is not closed to them. What is closed to reopen available to them if there is a 90-day limit? That's true, Your Honor. I had not, because the court has sua sponte discretionary discretion as well to consider motions to reopen. Outside of the 90-day? Yes. But I thought those were only joint motions. I am not aware that there's a rule that there's a requirement that they be joint motions. I see motions and records all the time for requests of sua sponte, and generally the board denies those, not because they aren't joint, but because the sua sponte power is rarely invoked by the board. That's usually the reason I see it. I've never seen one, to my knowledge, that says it has to be a joint motion to reopen. I could be wrong on that, but I'd have to check the regulation. So our argument on ineffective assistance, then, does not go into the specifics of counsel's performance. We would note, however, that counsel continued to represent the petitioners through appeal, and that counsel was the attorney that signed the documents, the requests for the motion that terminated the two petitioners from the removal proceedings. Though counsel represents that he was counsel of record at the time, it was Ms. Doyle who signed the motions that effectuated the termination. But I don't see how that's at all relevant to her ineffectiveness with regard to the remaining petitioners for whom she did not appeal to the BIA. True, but it does go to the issue of counsel's overall representation of these specific petitioners. She represented them before the immigration judge. She made an argument for continuance. The judge gave her 10 minutes to meet and advise her clients and discuss her course of action with the court. That 10 minutes came in and she said, we're not going forward, Your Honor. She had her opportunity, but she had a strategy, because after that decision, she filed an appeal based on the same grounds she had before the court. In other words, she believed she had a right to a continuance. She just didn't get it. That tells me that it wasn't entirely happenstance, that in fact she had a strategy, even if it was developed at that moment before the immigration judge, that I'm going to take this up on appeal. He's wrong. So to me, Your Honor, I may not have agreed to that strategy. I may not have taken it that way, but at least she was thinking to the next step. And I don't know that in my position here today, I would say that that is entirely ineffective, because if we go to the ineffective test, you know, it did entirely preclude her ability to put on a case. In the short run, yes, but in the long run, she still took it up on appeal. She still fought her case. She just didn't get her continuance motion. Well, what do we do with the argument that she didn't get an opportunity to make the argument? There's a lot of crosstalk on the transcript. I mean, it's speaking over each other, what have you. So, counsel, this morning, there was an attempt to put on a basis why I needed a continuance, but the judge wouldn't allow her to make it. I'd make two responses to that. The first one is, she filed a written motion. She didn't put any of those arguments in a written motion. So, I mean, first off, you know, your filing with the court needs to tell the court what your argument is. She had an opportunity. She missed it. She got into court. And yes, there was a testy colloquy between the immigration judge and counsel. But again, he said to her, tell me what your basis is. This came out at the very beginning. Tell me, what's the basis of your motion? The back and forth occurs. The immigration judge, I don't think, was so unruly as to cut off all avenues of argument for counsel. She certainly had, what, three, four to put on her case, but she just never got there. She kept going to, and attendant thereto, or considerations thereof. You've got to be concrete. You've got to make your argument. Unless there are any more questions on the... Yes. Yes. On the merits, could, do you think, what would your argument be regarding the merits as, you know, about the kidnappings, ransom demands by a gang based on their perceived wealth? Is that a protected group? No, generally it's not. A couple of points on that. First off, the board, under the discussion on the denial of the continuance, did point out that in a due process analysis, they had failed, the petitioners had failed to demonstrate a likelihood or a probability that the proceedings would, outcome would have been different. They haven't done their, they didn't do that below, and they haven't done it here. A series of facts is not enough of a demonstration of a probable change in the outcome of a proceeding. There has to be some application of law. The law here in, in, you know, wealth, perceived wealth, returning, is generally just not accepted in any of the circuit courts as a particular social group, a cognizable particular social group. Therefore, I don't think there's any showing of a probability of a different outcome in these, in the removal proceedings. Is it out of, is it out of the question that the government would join Mr. Pugh in a motion to reopen? Your Honor, at the time that this case was in mediation, I had conversations with the client agencies, and at that time, the government was not willing to seek a motion, or agree to a motion to reopen. That's the most that I really want to say about that. From your perspective, do you see anything foreclosing us from staying our mandate to allow those discussions to resume, if we agreed with you, that otherwise there would be no jurisdiction? I'm sorry. If we agreed with you on the exhaustion point. Yes. From your perspective, is there anything barring us from issuing a decision and  I don't know that it, I mean, that is always available to the parties here. Mr. Pugh can come to me, or he can go to the agency to have conversations at any time to try to reopen or reconsider what's going on in removal proceedings, because of course, that, that is controlled by the agencies, not by Department of Justice. I, I hesitate to think that that's appropriate in a mandate, because usually in the mandate, we get a response that either grants or dismisses the petition. Generally speaking, we don't get other advisements from the court about how to handle the case in the future. I don't know that it would change, what we would have is we'd have a final removal order that could be affected. The fact that court says that we can continue to seek a reopening, it doesn't change the standard for the board. And it doesn't change the fact that Mr. Pugh is more than able to go to the agency at any time to seek the same. Unless the court has any other questions, that concludes my argument. The respondents would request respectfully that the petition be denied. Thank you so much, Mr. Finn. Mr. Pugh, let me give you the three minutes you asked for. Judge, thank you very much. So, Judge, there's just three things I want to address and I'll be, I'll be hopefully quick. Firstly, the, the issue of the trial counsel had 30 days to file their appeal, only 30 days. And it was, it was her, the person that we are saying was ineffective, who filed it. So once that is filed, those are the issues that you are tied to. And, and she, she saw that appeal to its conclusion. So the, the first ability for someone other than the attorney to file an appeal. Secondly, regarding attorney preparation in cases, you know, because Hashimi does, Your Honor, is 100% right, address, you know, collateral benefits that, that can be sought by the respondents in the immigration cases. There, there's very little case law that exists in this circuit or in other circuits, quite frankly, that addresses this issue and, and I don't see that the Hashimi factors have ever been applied or not applied to attorney, to attorney preparation issues regarding motions to continue in immigration cases. I think that if this court rules, if it's, if it's not otherwise ruled, ruled upon with a stay or motion to reopen, which is clearly the better way to, to handle the, the case, then I would ask that, that this, this court, you know, take that stand from the, the point of view of the Seventh Circuit to allow a clear answer that applies these Hashimi factors to attorney preparation cases. Because Your Honor's argument, Judge Rovner is exactly correct that it's never been specifically applied. And finally, on the merits, Judge, this, this case, assuming that, and I think this should be read in to the appellants here, the, the, the case here involved a murder, several kidnappings, ransom paid in excess of $100,000, torture, armed robbery, and finally fleeing to the United States. Those, and, and obviously counsel's argument is correct that just stating facts doesn't make it, doesn't meet the, the, the level of, that is required for a merits hearing. But those facts could have been proven, they just weren't. And so that, that alone establishes ineffective assistance and Judge, you know, it's, it's not, it's not reasonable to the respondents. I'm sorry, I'm out of time. Thank you, Your Honor, for your time. I think Mr. Finn gave you some roadmap here. He did. All right. And I want to, I really want to thank both of you. Thank you, Mr. Pugh. Thank you, Your Honor. Many, many, many thanks to Mr. Finn. The case is taken under advisement and the court.